May it please the court, Aaron Vasey on behalf of the petitioners, I'd like to reserve three minutes for rebuttal. This case centers on an adverse credibility finding and immigration judges denial of the petitioner's request for continuance. In finding the petitioner not credible, the IJ relied on four alleged inconsistencies, one omission, one portion of an implausible testimony, and a perceived lack of responsiveness. I'm going to address each in turn at least until one of you stop me. Okay, keep your voice up a little bit, okay? Yes. Let me ask you, was there a demeanor finding? There was not, and I think there's a disconnect generally speaking if you look at the judge's opinion. It characterizes the record as, you know, only events that support the judge's finding. There's no mention of demeanor at all. I think if you review the record, there are plenty of portions of the record that support the opposite conclusion that the respondent or that the alleged inconsistencies cited by the immigration judge. The first one was that the judge alleged that the petitioner provided conflicting statements about You're going too quickly and you're talking down instead of out. Okay, I'll fix this. The judge said that the petitioner provided conflicting information about the location of where protests began in February 2021. First, this is not a real inconsistency. According to the judge, the petitioner said in his written declaration that the protest began at his house, basically outside of his front door, and that later during testimony, he changed his answer to say that actually the protest began in his neighborhood, a short walk from his home. Again, this is not a true inconsistency. The petitioner clarified during testimony that when he used the word home in his written declaration, he was referring not to his literal house, but to his neighborhood, Kazanga. Again, he received a number of questions from this by the IJ attempting to clarify this, and at the end, he again maintained that same position. He said, while I did leave my home, the protest began in my neighborhood a short walk away. Again, the petitioner's position is that this is not a true inconsistency. So when the petitioner said in the declaration, the demonstration began at 10 a.m. at our home in Kazanga, your point is he meant kind of the general area where I live, not my specific residence. And the word used is not house, it's home, which I think supports that. Even if this is an inconsistency, I would say that it's trivial. The petitioner testified consistently about the date of this protest, the purpose of this protest, his involvement, and his family's involvement, whether the protest began outside of his front steps or a short walk away, doesn't enhance the petitioner's claim and doesn't have bearing on his credibility. They were headed to a particular location, is that right? Correct. And the petitioner was able to speak with specificity about the route that the protest was going to take. Again, that's something that's not mentioned in the IJ's conclusion, because I think it goes against the ultimate conclusion reached by the IJ. Another inconsistency cited by the IJ is conflicting information about whether the petitioner was in the DRC when he was working closer to the border between Angola and the DRC around the time that these events transpired in 2021. Essentially, at first, when questioned about this, the petitioner says that he hasn't been in the DRC since 2002. Based on the record, he spent many years of his life as a young man in the DRC, and he stopped living in the DRC in 2002. I don't think this is an inconsistency. I think this is instead an example of the petitioner merely misunderstanding the question being asked. You can see this clearly reflected in the transcript at page 213 on line 11. The petitioner specifically asked, what do you mean by, you know, when I was last in the DRC? Do you mean when I was visiting for tourism? What do you mean? At that point, counsel for the department clarifies when were you last on DRC soil? After that, the petitioner's responses are consistent and detailed. He says, oh yes, in that case, I was traveling to the DRC regularly to conduct my business because I worked on the border. Moreover, when we focus on this inconsistency, the petitioner is never given an opportunity to explain this alleged inconsistency. Nor is this, this court has held that failure to provide a petitioner an opportunity to explain an inconsistency does not survive the substantial evidence standard of review. Nor is this an inconsistency that's so obvious that the IJ doesn't have to bring it to the petitioner's attention, right? We have a case here where the petitioner is asking clarifying questions and clearly doesn't understand the previous questions he was being asked. It's not obvious that he was on notice that his previous answers were inconsistent. The IJ's failure to provide the petitioner an opportunity to explain, therefore, doesn't survive substantial, is not supported by substantial evidence. The bottom line here on this one is that he's crossed into the DRC, I guess it is. Yeah. In the market area. Right. Business. Yeah. And you'll hear me say this repeatedly. A lot of the inconsistencies or issues cited by the AJ I think really relate to trivial details. I think any case is going to have these, these types of inconsistencies at the core of the court's analysis of someone's credibility is the question, are they fabricating their claim? Here, I just don't think there's any logical reason to infer that the petitioner's lying or hiding his involvement or his, you know, travel back and forth across the border to enhance his claim. I don't think it bears on his credibility. Well, his presence in the DRC would indicate that he was afraid of being in Angola. And if he says, I've gone back and forth to the DRC all this time, it doesn't indicate that he was afraid of being in Angola. He was just living in Angola, but crossing for salesman purposes. And that's true to an extent. So the petitioner did relocate far away from where this, you know, incident of extreme harm took place. That harm took place in Luanda, basically the capital city of Angola of the country. The petitioner and his family relocated to this border town. And for a time, I think they did feel like they were safe. How far away was that? I think the petition testified that it was about a six hour drive away. And it was only later when the petitioner was informed that other family members of his were being sought out and murdered that he then felt unsafe and took steps to live in hiding is what he testified he was doing around that time and that he did stop working between learning that and then fleeing the country. There's the situation with his father. I'm sorry, Your Honor. The other inconsistency had to do with his father. Yes. So this inconsistency relates to the petitioner's account of the extreme harm that he and his family suffered on this night of February 13th. So specifically, the IJ took issue with the petitioner's account of what he witnessed of his father's death, of his father's final moments. Here, I'd just say that case law is clear that courts have to take witnesses as they are, recognizing the normal limits of human memory and recall, especially where the witness is testifying about traumatic events that involve sexual violence and death. Here, the petitioner was describing an extremely traumatic event and had to pause at one point to collect himself. You can see that on page 162 of the record if you check the transcript. Given the traumatic nature of this event, I just think it's wrong for the IJ to hold this against the petitioner's credibility. Asking any survivor of such a traumatic event these questions repeatedly would naturally result in differing answers, especially when discussing details like this that are really at the core of the traumatic nature of the event, his father's final moments. There seemed to be a consistent pattern, though, in his responses to inconsistencies between his testimony and his declaration. When his testimony was consistent with the declaration, he said, yes, I remember that. But when it was inconsistent, he said his mind was so disheveled that he doesn't have any explanation for the inconsistency. Yeah, I would push back on that characterization, but you're right, Your Honor. The petitioner did say repeatedly throughout the testimony that his memory issues kind of were influencing his testimony in some way. Only when inconsistent. His memory issues didn't surface if the testimony was consistent between testimony and declaration. I mean, I think you're right, generally speaking, Your Honor, but again, I don't think that it's fair to impute the petitioner with kind of a nefarious motive on that basis, right? The petitioner has selective brain problems, apparently. I would disagree with that caricature, Your Honor, respectfully. Was the inconsistency about his father having to do with whether or not his father was dead when he saw him or whether or not he was in his last moments? So the inconsistency relates to what the petitioner witnessed when he entered the room where this, you know, harm was taking place. The first hearing, he testified that his father was dead when he arrived in the room. At the second hearing, he testified that when he arrived, he saw basically the light go out of his father's eyes, is what he testified. And Your Honor, to address your point about the memory issues, I will point out that this is something raised in the petitioner's written declaration. So before any testimony is taken, he states clearly that, you know, this traumatic event that he's experienced in combination with this, you know, literal injury to his head has generally, generally speaking, affected his memory. I think that came up during the hearing when kind of pressed on these details. And I think the petitioner really just broke down and was unable to respond to questions at some point. But again, I think that's different from refusing to answer. I think this is a case where the petitioners struggled to eloquently communicate about the trauma that they experienced. It's not them deliberately fabricating details to bolster their claim. The last inconsistency had to deal with his work as a self. Yeah. And so that's another good example. It's another example that where the memory issue kind of came into play. And again, I we acknowledge that the petitioner was not able to explain this conflict. Right. So he says that he stopped working in a specific day. His written declaration says that he had continued working and the petitioner wasn't able to explain this. But I think this is best views best viewed as an innocent breakdown of the petitioner's ability to recall the details of his declaration after hours of testimony. This portion of the transcript specifically takes place after basically at the end of the petitioner's second hearing. So he's been questioned for hours. And I think there's just a breakdown, so to speak. You can see this immediately prior. The petitioner makes a simple mistake, providing an incorrect month in response to one of my questions. The previous answer before this issue, the petitioners already kind of making simple mistakes. And I think that supports our characterization or our explanation that, again, the petition is simply this is an innocent failing to explain. I only have a few seconds left, so I just want to address the omission specifically. So the IJ also faulted the petitioner for admitting details about past harm that he suffered about a decade before he he left the country. The IJ does exaggerate this omission. So the petitioner had from the very beginning disclosed his and his family's long history of political activism in Angola. But the IJ is correct that none of this specific past harm was disclosed. I think the IJ does two things. So where in the declaration, in the declaration, it is disclosed basically at the onset of testimony. So when the IJ asks the petitioner if there's any additions or corrections he wants to make to his document, the petitioner brings this up voluntarily. But why was this not in the declaration? He seems to have some different answers on that. And I would say that the answer is the same, but the petitioner was providing different portions of that answer in response to repeated questions. At the first hearing, the petitioner is only asked a single question about this. Why isn't this included in your declaration? He says it's my attorney's mistake. He only receives more questions about that at the second hearing where he provides just more information. At its core, the petitioner's explanation is that his attorney told him to keep his story brief. So he made the decision to omit this past harm that he suffered because he didn't see it as important to his decision to flee Angola. And that explanation is supported by the record, right? This harm took place in 2011, and both the petitioner and his family continued to reside in Angola for many years, I think, supporting that explanation. I also don't think that this omission tells a much different story such that it should result in an adverse credibility finding. And I'm going to save the rest of my time unless there's any other questions. Okay, we'll put three minutes for you when you return. Thank you. Thank you. Good morning, Your Honors. May it please the court, Stephanie Graff for the Attorney General. Your Honors, this court should deny the petition for review as the adverse credibility determination here is amply supported by the record. The immigration judge here identified numerous specific cogent reasons for this holding, and Martin's arguments today to the contrary do not compel a contrary conclusion. And that's the main thing missing here, is what is the standard of review for this court in looking at adverse credibility determinations? The adverse credibility determination needs to be supported by substantial evidence. The record needs to compel a contrary conclusion. It is not a situation where there may be two inconsistent views of the evidence, as this court in Hussain v. Rosen has held. If there are two inconsistent views, that doesn't render the agency's finding unsupported by substantial evidence. Well, so how about, I mean, we can just look through these. I mean, the location where the protest began. So how is that one supported? By substantial evidence, Your Honor. Sure. Not even an inconsistency. Well, we believe that it is an inconsistency. I'll first note why. In his declaration, he stated that the protest started at his home. Then in both his initial merits hearing and his merits hearing, he provided various answers to where specifically it started. He noted that he did have to walk 10 to 15 minutes to the start of the protest. And ultimately, the immigration judge noted all this and noted that this may be, as my friend on the other side, trivial, but said that it contributes to the overall inconsistent portrait and painting that he has here for his claim. Isn't this kind of a minor point, like whether it began at his house or basically near his house in the same area? Well, we would argue that Martins is attempting to minimize this inconsistency. It is not the strongest one, but as this court is well aware, after the Real ID Act, inconsistencies do not need to go to the heart of the claim. So what do you think are the strongest ones? If this is not the strongest one, what would be? Sure. And this court can, if you find that's not supported by substantial evidence, the immigration judge's decision is amply supported by other aspects. The strongest one, we would argue, is related to his father's death. Specifically, in his declaration, he noted that when this incident happened in February 14th, he heard shots, he escorted his family out, and when he came back, his father was dead. During the first merits hearing, he testified to the same, that my father was shot, when I came back, I saw him dead. At a subsequent merits hearing, he noted that he saw his father crawling into the living room, so very different than dead, and then eventually died. He was confronted with these inconsistencies, with the difference between his declaration, with the first merits hearing, and the immigration judge found his responses were not supported. And that is specifically supported by substantial evidence. Do you agree there was no demeanor finding? Yes, Your Honor. The immigration judge here did not rely on demeanor, rather looked at inconsistencies, omissions, responsiveness. Demeanor is not determinative, and it can still be upheld, even though there is none. But specifically with the father's passing, I want to note, as we argued in our responsive brief, that a lot of what Martins and my friend on the other side today are arguing are post-talk rationalizations that Martin himself did not state. When he was confronted with this inconsistency, he did not specifically note that it was because he experienced trauma. And while yes, in his declaration, he noted that these are traumatic incidences, the immigration judge's decision addressed this and held, as noted before, that the judge was not sure what actually happened here. And when a judge finds that something, it's not actually clear, that's not necessarily the judge was saying that he is a liar, that he doesn't believe everything. But the judge was left with the conclusion he was not sure what happened, and that what we would argue is the strongest. Is it that much of a difference between saying, when I arrived home, my father was dead, to say, when I arrived home, my father was crawling into the living room and dying? Well, yes, Your Honor, we do think that it's a strong difference because the immigration judge here found that it was. And we think... I mean, why is it such a strong difference? I don't understand. Because this is a traumatic moment that Martins has claimed is the crux of why. Saw his father either dead or dying. What difference does it make? Well, it makes a difference because when he was confronted with it, he wasn't able to fully explain why he stated in both the declaration and his testimony what the difference was. Don't you think it would be hard for somebody to explain that, to see their father? Of course, Your Honor, the government's not claiming that this is a traumatic incident, but what the court needs to look at is whether the record compels a contrary conclusion. And the judge here, this is not something where the judge says, I don't believe him yet. The judge provided various reasons why, specifically noting that when attempt to clarify, he was unable to explain. He just noted, in my declaration, I provided a general account. That does not reflect why it is initial testimony. He stated one thing. And again, while the Real ID Act no longer requires inconsistencies to go to the heart of the claim, the immigration judge here found that this... Requires inconsistencies. It does. And relating the two versions of his father being killed doesn't seem to me to be that much of an inconsistency. Is it to you? Yes, Your Honor. We argue that it is an inconsistency and specifically here because there are various accounts of what happened. But if this court, again, were to not agree with us on the start of the protest and this, we still believe that there are various other aspects of the immigration's finding. How about him going to the DRC? That is one of our weaker supported claims. But as you, Judge Baya, noted with my friend on the other side, one reason that the judge found that was important is because he was afraid to be in Angola. And then he's later testifying that he's traveling back and forth, which the judge found that that's an indication that, again, it is not clear what happened to him. If everything he said happened to him before happened, then why is he traveling for work and unclear? I'll also note with traveling to the DRC, my friend on the other side noted that he wasn't confronted with this inconsistency. As we pointed out in our brief, that was not raised in their opening brief. So we would argue that it's waived, the claim that the judge... Doesn't the IJ say that though? Well, the judge said, yes, I didn't confront you with this inconsistency, but it's a clear one. And in their opening brief, they didn't mention that he was not confronted. But nonetheless, as the judge found, if an inconsistency is clear and obvious, then it doesn't need to be brought up. I would point this court to the second... How would this meet that standard? Just when he's asking for clarification, seems to be trying to offer this information and there's maybe some confusion, but regardless, how would this be an obvious inconsistency under that set of circumstances? Sure. The immigration judge found that it was an obvious inconsistency because again, he specifically noted that whether or not he was leaving Angola after what he claimed these incidents happened, and whether he left to go to the DRC, whether he was afraid, that is a problem. And I'll also note, this also ties back to when he claims he was in hiding. That was another inconsistency that the immigration judge relied on. Martin stated that he moved his family miles away. He remained in hiding, but later was confronted with information that he continued to work and then continued to cross into the border. He was unable to explain why that happened. And today, and in their briefing, Martin's counsel notes that he was exhausted, traumatic incidences happen, but this court can't credit attorney's statements and post hoc rationalizations. I also want to point this court to what we would argue is our second strongest, is the incident at the hospital. After the February 14th attack, Martin's testified that he went to the hospital with his mother and that he remained there for one night because he believed that's all he wanted. However, the judge noted and confronted him with the supporting evidence that stated there were two specific supporting pieces, medical documents, both by the same doctor that were dated February 14th, but listed his discharge date two separate dates, a week in advance, I believe two weeks in advance. When confronted with this, Martin stated that he wasn't sure why it was dated and he only wanted to stay one day and left. Additionally, the immigration judge found this unreasonable that and not persuasive that his mother would have stayed in the hospital and was a well-known UNITA member. And Mr. Martin's was afraid to stay because he was afraid the government would seek him out for harm. This is strongly supported by the record evidence. There are inconsistencies. It's not clear. I'll also note that the documentary evidence doesn't fit. Wait, wait, wait, wait, wait. What's inconsistent about that? Inconsistent with his testimony that he... Not between what happened to his mother and him, but... No, the inconsistencies is related to how long he stayed in the hospital. Inconsistent with the documents? Inconsistent with the documents. The two documents themselves are inconsistent. There's two dates of his release. It's also inconsistent with his statement that he stayed in the hospital for one day and then separate and apart, the immigration judge took issue with it because he stated, I only stayed one day because I was afraid the government would find me. And yet he testified that his mother remained in the hospital longer. So when confronted with that, the judge asked, why would your mother stay if she's a well-known protester and she did not have any issues? And the immigration judge found his answers... Not any medical issues? Issues with the government attacking her in the hospital. So the reason Martin stated that he was afraid to, and didn't want to remain in the hospital longer, is because he didn't want to call attention to himself with the government. I thought his mother, he saw his mother get raped. Yes, your honor. And so... Been hurt a little bit more, injured a little bit more and had... Of course, your honor. And the government is not contesting that aspect of it. However, what the immigration judge took issue with here is her being sought out by the government. And his fear that he would not stay because he didn't want to be sought out from the government, but his mother remained. So your position is that the hospital documents show that he stayed more than one night? The hospital documents list that he has a release date a week in advance and another almost two weeks in advance. That would show that he'd been more seriously hurt than staying for one night? Potentially, your honor. The documents themselves don't go into extensive detail of what happened to him, but they were dated the date of his release or the date of his entrance into the hospital. It seems to me the inconsistency of saying he was only there for one night would go against his case that he was beaten by the government police. Because if he stays there only one night, then that's a relatively slight injury. But if he stays there a week or two weeks, it would show that he was more injured. So it would be in his interest to say he stayed there longer. Why is that a material inconsistency? Sure, your honor. And I understand this court's concern with the concept of some of these statements that were inconsistent didn't necessarily help his claim. And it is can be very minutiae and specific. But I point back to what this court needs to look at, whether the record compels a contrary conclusion. The Supreme Court's recent decision in Ming Dai held that if substantial evidence supports the adjudicator's version of it, then this court cannot overturn it, even if your honors would disagree. And I think that's really what's important here. But don't we have the option to send it back for a further evaluation if we feel that some kind of supporting bases for this finding are not supported? If certain ones, if you find almost all of them are, however, we argue that some of them on their own are strong enough. For instance, the cooperative evidence aspect. At this, we've argued that a lot of the cooperative evidence also contains inconsistencies. As I noted, I didn't mention yet, but the declarations he submitted, affidavits, all were dated, all noted that the date of his main incident of harm was in 2023, when he was already in the United States. Again, this left the immigration judge who thoroughly looked at the record here and with this conviction of not fully understanding what happened to Martins and what. His declaration said that he was injured in Angola in 2023. The three supporting affidavits that he sought from family members and friends all noted that the incident on February 14th happened in 2023. And in my friend on the other side's brief explaining that, stated that it was likely due to, you know, an error Martin said, or maybe there was an independent error. However, that indicates that these affidavits were not independently created based on memories and knowledge that these people had specifically themselves. But yes, if this court were to conclude that. It doesn't go to his credibility for inconsistencies. It just goes to the evidence that was used by his counsel. Well, we were, I was arguing not necessarily his adverse credibility, but the cooperation finding. So the evidence here, the documentary evidence didn't fill the gap to make up for his adverse credibility. Now, this court were to find that these inconsistencies, omissions and embellishments, which I haven't yet mentioned, are not enough. Then yes, remand would be appropriate. I'll also note here that petitioner has not challenged the agency's independent finding. The judge here said that even with, despite all this, your country conditions evidence, you didn't meet your burden. But I do want to point, I only have 13 seconds, but petitioner did not include in his original declaration any of the harm that he claims to experience in the 2011 protest. And the immigration judge here appropriately found that it seemed that he was embellishing his testimony in order to potentially seek relief. Didn't he make some reference to his involvement in the 2011 incidents? He did not specifically state 2011 incident, but he did say that he attended protests with his family. But he did note, I believe in that declaration, if I'm remembering correctly, that his parents were injured and family members were injured. So the immigration judge took issue with that because when presented for testimony, he then noted that he was harmed. He was beaten. He was sprayed. And when confronted with this, it was not, he provided various accounts that the judge, again, was left with a firm conclusion of not knowing what happened to him and ultimately finding him not credible. Thank you, your honors. Thank you. Okay, so first I want to address my colleague's, I guess, statement about these embellishments. I think that if you set aside these new facts related to this omission, this past harm that occurred in 2011, this case still already has an immense amount of harm that I think rises to the level of not just persecution, but torture. We have murder and rape and really the worst types of violence. These new details, though, you know, relevant to the petitioner's political history, I don't think actually move the needle in the legal analysis of the case. And I don't think they should be construed as embellishments. Next, I want to talk about the IJ's, I guess, insistence that portions of the petitioner's testimony were implausible. This, again, relates to his explanation that he left the hospital early because he was afraid of being apprehended by the police while his mother remained in the hospital. The judge is correct that his mother was also an UNITA member, but the judge ignores other evidence in the record that could equally explain this, right? The fact that the petitioner's mother's injuries were more severe, that she was beaten and raped, and that that might prevent her from leaving the hospital early. This is also an example where I don't think that IJ gave the petitioner an opportunity to explain this potential issue, which, again, means that I don't think it's this aspect of the judge's decision is supported by substantial evidence. What's your explanation with respect to the different dates on the medical records again? A few explanations, but the documents are all issued on the date that the petitioner was admitted to the hospital, which I think supports his explanation that he was admitted to the hospital, but he wanted to leave. And so he was obtaining these documents from the hospital, and that's why they're dated that date. And that might also be why they weren't corrected to reflect how long he stayed or when he was discharged. Again, as your Honor pointed out, if this is a petitioner fabricating his claim, it would make more sense for him to say, oh, yeah, I was at the hospital for the amount of time that my medical documents indicate, instead of changing his story like this. While I have time, I also just want to briefly touch on the denial of the petitioner's motion for continuance, right? The petitioner sought more time so that his spouse, who had just arrived in the United States, could travel to Washington. Because you didn't bring it up in your opening argument, and counsel didn't have an opportunity to meet that. So the continuance issue, I think, is waived. OK, I'll leave that for the briefs then. In that case, with my last 30 seconds, I'll just talk about the father's death and how that detail doesn't, I think, affect the case. The petitioner testified consistently about the fact that his father was killed, the identity of the people that killed him, and other specific details, the statements that these attackers are making. This alleged inconsistency about whether his father was alive or not when he entered the room really, again, doesn't move the needle and shouldn't be seen as the petitioner attempting to enhance his claim. And then, in closing, I'll just say that I think that we've pointed out that there are numerous and serious holes in the judge's analysis of this case. I don't think the judge's adverse credibility finding is supported by substantial evidence. We would ask this court to grant the petition and overturn the judge's adverse credibility finding. And remand it back to the agency for consideration of all the other aspects. Right. The judge did not reach past persecution or nexus or any of those other issues. Okay. Thank you. We thank both counsel for the briefing and argument. This case is submitted. That concludes our calendar for this morning, and we'll stand in recess until tomorrow.
judges: PAEZ, BEA, BRESS